Good morning, Your Honors. May it please the Court. My name is Erica Rokish. I'm representing Rudy Rodriguez, the appellant in this case. I would like to reserve two minutes for rebuttal. The issues in this case are not very complicated, and the facts are not very complicated, but they are important. The at issue is whether a deprivation of outdoor exercise for 40 days is a violation of the Eighth Amendment. Now, because of the posture of this case that a motion for summary judgment was granted against Mr. Rodriguez, the Court must accept the fact that Mr. Rodriguez was deprived of all outdoor exercise for 40 days, even though defendants at one point in their response undermined that claim. For purposes of this decision, you must take that the plaintiff was deprived of exercise for 40 days and all exercise. Under the Ninth Circuit's decision in Allen v. Sakai, the Court found that six weeks' deprivation of outdoor exercise was sufficiently long-term to violate the Eighth Amendment. And what is important in that case is not only that it was six weeks, which is at most two days more than the deprivation that occurred here, but the prisoner in that case was allowed 45 minutes of exercise per week. So the plaintiff in Allen actually received a minimum of three hours and 45 minutes more exercise per week, total, in the 40 days than Mr. Rodriguez did. And do you get to count that in terms of hours, or do you get to say there are X number of days in which he was allowed exercise in Allen, which would then take it down to, I don't know, how many weeks was it in Allen? It was 42, so. In Allen, it was six weeks, so I'm assuming 42 days. So six days in which there were exercise and 36 days in which there were not exercise in Allen. Yes. And here we have 40 days without any exercise. Without any exercise whatsoever. Okay. Of course, in that case, the prisoner, whose name's Smith and not Allen, so it got me confused for a while, but at least the prisoner they're talking about, the court made a point of saying that his incarceration in the special housing unit was indefinite and therefore potentially long-term. Now, that apparently does not apply to your client. Does that make a difference? Well, I would disagree that it doesn't apply to my client because on my client was originally segregated on February 25th. On March 3rd, the Institutional Classification Committee held that Mr. Rodriguez should be segregated indefinitely. It was not until the 28th of March, so over a month later, that they made the decision that he should be put back in the general population. So for a period of over a month, he didn't know how long. He didn't know if he was going to be segregated indefinitely. And obviously in Allen, I mean, I don't know the exact facts in terms of how they determined it was indefinite, but it was a period of six weeks. So there was an end date to that deprivation as well. But in terms of the psychological impact it would have had on Mr. Rodriguez, he had no idea when he was going to be placed back in the general population. So it would be, it was indefinite from his perspective. And it was indeed indefinite until the ICC made its decision at the end of March that Mr. Rodriguez was not at fault and therefore should be placed back in the general population. My problem with your case is, assuming that you're right, that this is under our applicable case law, particularly Allen, an imposition of cruel and unusual punishment because of the sustained uninterrupted lack of exercise for 40 days. This is a damage suit, and we're parsing the cases here, and you've got a qualified immunity problem. That is to say, not only does this have to be a violation, this has to be a very clear violation, if I can sort of paraphrase the case law. How do we get from violation to clear violation that any reasonable correctional officer should have known if it's taking us this amount of work to parse the cases? Well, I believe that there's several reasons. One, I think it's important to keep in mind that this was a motion for summary judgment that was granted. So a remand, which is what we're asking for, I don't think you can determine as a matter of law at this, as a motion for summary judgment, that the defendants are entitled to qualified immunity. And I base that on a few things. One is that the right to outdoor exercise was established in the Ninth Circuit 25 years ago in Spain versus Procuniae. Yeah, where there was a 4-year deprivation. Yes. And also, and more importantly, in Allen, the Court found that 6 weeks was a sufficient deprivation, and that even at that time, the law was clearly established that this was a sufficiently long-term deprivation to violate the Eighth Amendment. One other thing that I think is important is that this was a long-term deprivation I've been sitting on Allen. I might have gone the other way on the question of how clear the law was that 42 days was long enough, but to be that what it is, Allen is Allen. Okay. Right. And one other thing that I believe is very important is the Department of Corrections regulations state that even prisoners housed in administrative segregation units have a right to a minimum of 10 hours per week of outdoor exercise. So for defendants to argue that they didn't know that there was a right to, for the prisoners to have outdoor exercise, I think is somewhat disingenuous. And they justify their actions by saying that there were these gang fights occurring at the time, and that they were understaffed, essentially, and couldn't provide monitors. The issue of the gang fights was addressed more or less in Lopez saying that it's not sufficient justification that you're saying that you deprived this prisoner for his own protection. You need more than that. Maybe he needs special dispensation, he can't go out in the yard, but Lopez said that's not enough. And the fact that the courts may be understaffed, or the prisons may be understaffed, I don't necessarily dispute, but that's not sufficient justification to deprive an inmate of his Eighth Amendment rights. If you have no further questions, I'd like to reserve the rest of my time for rebuttal. Surely. Thank you, Your Honor. Good morning. My name is Troy Smyre, and I'm a Deputy Attorney General here on behalf of the defendants. The lower court's granting of defendants' motion for summary judgment should be affirmed because plaintiff has failed, even if he were to take the record for the court, the plaintiff has failed to establish that he was denied his constitutional rights to be free from cruel and unusual punishment. Secondly, even if the court were to determine that a constitutional violation had occurred, the defendants, as correctional officers, would be entitled to qualified immunity because it was not sufficiently clear or clearly established that at the time of the alleged offense, which is in 2000, between February and March of 2000, any right the plaintiff may have had to be free from deprivation of his constitutional rights with regard to outdoor exercise, less than 42 days was not clearly established. It's important to note in this matter with regard to Mr. Rodriguez, he had been placed in administrative segregation, which essentially, by definition, is a temporary situation. It's a temporary condition of his housing. Administrative segregation is not permanent. By nature of the regulations that Mr. Rodriguez had an opportunity to appear before the Classification Committee within 10 days and then to appear again within 30 after the hearing following the 10-day initial period in administrative segregation. Furthermore, at the time of the alleged violation, a reasonable officer would not be in a position to determine whether or not a period of 21 or 22 days would result in a constitutional violation. It wouldn't be reasonable to expect the officer to do that, nor would it be a basis, or should be a basis for that officer to be liable for civil damages. I've got the following question, and it's kind of a tricky one to which I'm not positive I know the answer. Let's assume, I'm not asking you to concede, let's assume that the officer knows that this deprivation of exercise for 40 consecutive days is a violation of prison regulations, and the officer also knows about the constitutional right to get exercise and can read Allen. Does the fact that he knows that he's violating prison regulations and knows about Allen get Mr. Rodriguez past the hurdle of qualified immunity? Because we have now someone who knows he's violating valid and applicable regulations. He may or may not be able to know for sure where the Allen constitutional line is. Your Honor, we would propose that the officer, assuming the officer is aware of, there is no, assuming the officer is aware that the court has set a threshold level of 42 days of outdoor exercise resulted in a constitutional violation. And let's just say Allen, because it's 42 days during which there was some minimal amount of exercise. Right. And for purposes of qualified immunity, it would be the constitutional right of the inmate that must be clearly established. And if that were clearly established at 42 days, and as long as the inmate had not been deprived of outdoor exercise either to the same level of, same number of days, 42, as long as it remained less than the officer should be entitled to qualified immunity, it would be a violation of the constitutional right of the inmate to be entitled to qualified immunity. In addition. And it's irrelevant for the question of his knowledge of the constitutional line and for his obligation to, and for his entitlement to qualified immunity, it is irrelevant any violation of prison regulation. Your Honor, I don't believe a prison, a regulation, a Title 15 regulation would give rise to a constitutional violation or basis for a constitutional violation or a civil suit against an officer. I'm quite sure that's right. And my question is a slightly different one, and that is, does it somehow make him more vulnerable to a charge in the sense of qualified immunity, because we have to decide that he's violated Allen. And I'm assuming that he's violated Allen, but that the line in Allen is somewhat ambiguous. And therefore, if he didn't have the prison regulation, that he's got qualified immunity. Does it make a difference to the qualified immunity that there's a prison regulation that he knows he's violating? Your Honor, I believe that as long as he is not violating the parameters established by the court, he should not, he should still have an opportunity to assert the defense and receive that, the benefits of that defense of qualified immunity. And the answer to the question then really is the only issue as to qualified immunity is to the clarity of the constitutional line, and a violation of regulations as to that issue is neither here nor there. Yes, Your Honor. And I believe that, again, I think as I've argued. I'm trying to lead you to an answer to the argument that was made before by your adversary. Your Honor, I do believe also in the record there's evidence that, evidence for the court to consider that the inmate did have an opportunity to exercise. It may not have been outdoor exercise, but there was evidence as to exercise within the cell or an opportunity to visit medical facility. Is there anything in Allen that says jumping up and down inside the cell is sufficient? No, there is not, but there would be evidence in the record to support that there was an opportunity for out-of-cell activity, including a visit to an MTA or a medical facility or a showering facility. Let me follow up on Judge Fletcher's question. Assume for the moment there's a violation of a prison regulation. Is there a procedure within California for an inmate to pursue grievance or any kind of remedial action to complain specifically about the violation of the prison regulation? An inmate would have the opportunity to file a CDC form 602 to grieve anything that that inmate believed to be a violation of either his rights, whether they're from the Constitution or the regulations or even something not contained within either of those. So the inmate could have an opportunity to file the 602 and to have it reviewed by either the warden or some other prison official, and even if the inmate weren't satisfied with that response, there would be an additional level of review that the inmate could seek within the institution and then appeal it to the director's level outside of the institution for remedy. Did the plaintiff do that here? The plaintiff, I believe, did file a grievance by filing a 602 in this manner. What happened to that? At the time that the grievance was ruled upon, the inmate had been transferred out of administrative segregation and had been moved to a different area within the institution. The inmate actually was moved from C8 to D3 and then, I believe, to B facility. And at the time that they get it. I think it could be done. I take the California internal procedure as a remedial one, not one designed to give him a claim for damages. Yes, Your Honor. So his grievance, I believe, was granted because by then he had been moved out of C8.  Thank you. Thank you very much. Ms. Rogosh. Thank you, Your Honors. I would just like to clarify what the standard is for qualified immunity in terms of the clear violation of an established right. In Allen, the court stated that a public official is not entitled to qualify immunity when the contours of the right are sufficiently clear that a reasonable official would understand what he is doing violates that right. And in Oslin v. Bob, the court said that in order for a right to be clearly established, it is enough if the cases, if the circuit's decision foreshadow a particular result. So the fact that 40 days had not been decided by the Ninth Circuit I don't think is dispositive in this case. 42 days had been decided. What about 38? Well, and that's the inevitable argument. How far does it go? Yes, but doesn't that just point up the fact that there was no clear line? And there is no clear line, but I would say that it is to – there's two points, actually, to that. One is there had been prisoners housed in C-8 for three months before Mr. Rodriguez got there. And none of the – and the record reflects that none of them had gotten outdoor exercise for any of that time. Well, they may be differently situated. Well, and that is true. But one other point, I think, that goes to that is the – in terms of deprivation of rights for prisoners under the Eighth Amendment, it's important to keep in mind that the standard should reflect the current scientific evidence of what is required for help. And Allen was decided 10 years ago and said that 42 days was sufficiently long-term. Well, in Lopez, which was decided six years ago, we said six and a half weeks is longer than Allen. Therefore, it qualifies as long-term. Right. But that doesn't necessarily mean that anything shorter than Allen, I would argue, is not sufficiently long-term. Well, at least 21 days isn't. Right. But in this case – Somewhere between 21 and 42, there's some line, I guess. I mean, I'm not suggesting any of this makes any sense, mind you. But that's where we are. And 42 days factoring in some minimal amount of exercise. We're booking it in a very peculiar way. Yes, Your Honor. I'm out of time. Sorry. Thank you very much. Well, thank you for your argument, both of you. The matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton